UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL No. 663, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>Defendant. | Civil Action No. 0:19-cv-02660<br>The Honorable Joan N. Ericksen<br>Magistrate Judge Tony N. Leung<br><br>**DECLARATION OF HANY SIDRAK** |

I, Hany Sidrak, hereby declare and certify as follows:

1. Since May 2018, I have held the Deputy Assistant Administrator position in the Office of Field Operations (OFO), Food Safety and Inspection Service (FSIS). In this capacity, I share responsibility for planning, coordinating, and directing programs of regulatory oversight and inspection pursuant to laws that are designed to assure the wholesomeness, safety, and truthful labeling of the nation's domestic meat, poultry, and egg products.

2. I am a 1984 graduate of Cairo University, College of Veterinary Medicine. I joined FSIS in November 1991 and served for approximately five years as a Public Health Veterinarian, providing veterinary expertise and supervisory authority in FSIS regulated slaughter establishments. I have since served in various FSIS Headquarters technical, management, and leadership positions. During my time with OFO, I have helped to develop and implement the young chicken and turkey and market swine HACCP-based Inspection Models Projects (HIMP), which formed the basis for the development and implementation of

the New Poultry Inspection System (NPIS) and the New Swine Slaughter Inspection System (NSIS), respectively.

3.   I make the following representations based upon my personal knowledge and upon facts made known to me in my capacity at FSIS.

4.   I understand that the plaintiffs contend that increases in line speed in market hog slaughter establishments operating under NSIS will result in more injuries to establishment workers, as they will have to perform the same tasks at higher speeds. I disagree with this contention for the following reasons.

5.   To date, seven high-volume market hog slaughter establishments have converted to NSIS. For ease of reference, this paragraph contains the name, geographic location, and conversion date for each of the current seven NSIS plants:

| Plant Name | City | State | Former HIMP | Conversion Date |
|---|---|---|---|---|
| Seaboard Foods | Guymon | OK | No | 3/2/2020 |
| JBS-Swift | Beardstown | IL | Yes | 3/30/2020 |
| Quality Pork Processors, Inc | Austin | MN | Yes | 3/30/2020 |
| WholeStone Farms Cooperative, Inc. | Fremont | NE | Yes | 3/30/2020 |
| Smithfield Packaged Meats Corp. | Los Angeles (Vernon) | CA | Yes | 3/30/2020 |
| Clemens Food Group, LLC | Hatfield | PA | Yes | 3/30/2020 |
| Clemens Food Group, LLC | Coldwater | MI | No | 3/30/2020 |

6. To date, there is only one swine slaughter facility that was subject to an evisceration line-speed limit of 1,106 head per hour prior to the promulgation of the Final Rule and is no longer subject to that limit because it has adopted NSIS. That plant is the Seaboard Foods swine slaughter establishment in Guymon, Oklahoma, which converted from the traditional inspection system to NSIS on March 2, 2020. The Clemens Food Group establishment in Coldwater, MI was not subject to any line-speed limit prior to the promulgation of the Final Rule; it had obtained a waiver of that requirement and used a HIMP-like system. The other five NSIS establishments already used NSIS-compliant procedures as participants in the HIMP pilot.

7. To date, five other swine slaughter establishments have informed FSIS that they plan to convert to NSIS. These establishments have no obligation to convert, however, and it is unclear when they will do so (if at all). FSIS's policy is not to release the names of establishments that have expressed an interest in converting to NSIS without first asking the establishment whether it has any objection to such a disclosure.

8. An establishment's ability to operate at a higher line speed depends on a variety of factors, such as the availability of adequate number of employees to perform all steps of the slaughter and evisceration processes including sorting and trimming carcasses and parts, the size and condition of the animals being slaughtered, functionality and maintenance of the establishment's various equipment, its ability to maintain process control, and the general supply and demand for pork products. The former HIMP establishments and the current NSIS establishments may increase evisceration line speeds above the maximum traditional inspection regulatory speed of 1,106 head per hour. But their line speeds fluctuate, so they

often do not operate above that speed for the entire shift.  Nor do they exceed that speed during every shift.  These establishments may exceed 1,106 head per hour only if they maintain process control; otherwise, inspection program personnel have the authority to stop or slow the line speed and document the lack of process control on a Non-compliance Record (NR).  Repeat NRs will result in escalating enforcement action against the regulated establishment, up to and including withdrawal of the FSIS grant of inspection.

9. In recent weeks, several market hog slaughter establishments have significantly reduced their evisceration-line speeds due to staffing shortages associated with the impacts of COVID-19.

10. Under the traditional swine slaughter inspection system, FSIS inspectors on the evisceration line are responsible for identifying contamination or defects on swine carcasses and parts and directing establishment employees to remove them.  Under NSIS, the establishment is responsible for identifying and removing such defects on carcasses and parts before inspection by FSIS inspectors.  This effectively requires establishments choosing to operate under NSIS to hire additional employees.  Establishments typically hire more employees to identify and remove defects, which means that the work is divided among more people. Therefore, the fact that an establishment uses a faster evisceration-line speed does not necessarily mean that each individual employee on the evisceration line is working at a faster rate.

11. Establishments that adopt NSIS typically reconfigure their evisceration lines to account for changes such as a decreased number of FSIS online inspectors.  As a result, an

establishment that converts to NSIS may provide more space for each worker on the evisceration line than it provided under the traditional inspection system.

12. Most processing of carcasses and parts by establishment employees using sharp instruments such as knives and saws occurs on processing lines, not on evisceration lines. FSIS does not and has never regulated the speed of processing lines, either under NSIS or under the traditional inspection system. The only establishment employees who use knives on the evisceration line are those responsible for removing abnormalities and contamination from carcasses and those who incise the mandibular lymph nodes.

13. Market hog carcasses are chilled in a cooler for approximately 24 hours before they are further processed. Because of this chilling step, the speed of evisceration lines can have no impact on the speed of processing lines. Any planned increase in the evisceration line speed must be planned ahead by the establishment and carefully matched with an increase in the cooler's capacity, which is besides being a major capital investment is not always possible because of many factors including, but not limited to, availability of space in the existing premises of the official establishment.

14. I am aware of no establishment employee injuries under NSIS that resulted from establishments operating at line speeds faster than those allowed under traditional inspection.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 13, 2020

HANY SIDRAK
Digitally signed by HANY SIDRAK
Date: 2020.05.13 15:46:20 -04'00'

Hany Sidrak
Deputy Assistant Administrator
USDA/FSIS/OFO