UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United Food and Commercial Workers
Union, Local No. 663; United Food and
Commercial Workers Union, Local No.
440; United Food and Commercial
Workers Union, Local No. 2; and United
Food and Commercial Workers Union,
AFL-CIO, CLC,

        Plaintiffs,

v.

United States Department of Agriculture,

        Defendant.

Case No. 19-cv-2660 (JNE/TNL)
ORDER

On March 31, 2021, the Court granted summary judgment to Plaintiffs and vacated part of a challenged agency action that had allowed certain pork plants to eliminate line speed limits. *See* Modernization of Swine Slaughter Inspection, 84 Fed. Reg. 52,300, 52,315 (Oct. 1, 2019) ("Final Rule"). The Court stayed entry of judgment for 90 days to give USDA's Food Safety and Inspection Service ("FSIS") and regulated parties an opportunity to adapt to the vacatur. The background of this case is detailed at length in this Court's March 31, 2021 summary judgment order.

On April 30, 2021, Seaboard Foods, LLC, moved to intervene to stay entry of judgment for another ten and a half months.[1] On May 7, 2021, three pork producers that

---

[1] Seaboard also filed a separate motion to stay. ECF No. 136. Because Seaboard was not a party or approved intervenor at the time that motion was filed, it was improper. The Clerk of Court is directed to terminate the motion.

1

had previously increased line speeds under waivers in a USDA pilot program, Clemens Food Group, LLC, Quality Pork Processors, Inc., and WholeStone Farms Cooperative, Inc. ("Pilot Participants"), also moved to intervene. This group sought to clarify that the Court's summary judgment order reinstated the waivers. The parties opposed both motions to intervene. The motions are denied because intervention is not timely.

I.  **Proposed Intervenors**

Seaboard Foods operates a pork plant in Guymon, Oklahoma that converted to the NSIS. Declaration of Stephen Summerlin ¶¶ 2–3, ECF No. 131-1. Seaboard estimates that it will need ten and a half months to adapt its vertically integrated operation to the previously imposed line speed limits. *Id.* ¶¶ 4–5. It has calculated that "reverting to a line-speed limit of 1,106 head per hour will result in approximately 126,000 excess market hogs coming out of the company's production pipeline." *Id.* ¶ 17. Seaboard has been in communication with USDA but "[t]hose discussions have left Seaboard without any reasonable certainty that USDA intends to appeal or to seek the sort of stay (10.5 months) that Seaboard would need in order to clear the excess supply in its production chain." Seaboard's Mem. at 12, ECF No. 130.

Before the NSIS went into effect, the Pilot Participants operated pork processing plants with line speeds above the previous limit under waivers from FSIS. In the Final Rule, FSIS noted that the line speed waivers would end. Final Rule at 52,301. The Pilot Participants seek intervention to ask "the Court to make clear that its ruling restores the regulatory status quo ante by restoring the Pilot Participants' waivers, or else by requesting a stay, appealing, or both." Pilot Participants' Mem. at 12, ECF No. 150.

## II. Timeliness of Intervention

"On timely motion," Federal Rule of Civil Procedure 24 allows nonparties to intervene in a civil action. Timeliness is a threshold question that must be shown whether the intervention is permissive or of right. Fed. R. Civ. P. 24; *NAACP v. New York*, 413 U.S. 345, 365 (1973). The Eighth Circuit has established four timeliness-related factors: "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011). "The general rule is that motions for intervention made after entry of final judgment will be granted only upon a strong showing of entitlement and of justification for failure to request intervention sooner." *Planned Parenthood of the Heartland v. Heineman*, 664 F.3d 716, 718 (8th Cir. 2011) (quoting *United States v. Associated Milk Prods., Inc.*, 534 F.2d 113, 116 (8th Cir. 1976)).

### 1. Progression of the Litigation

This factor weighs against intervention late in the litigation but should be considered in the context of the reasons for delay and is "not necessarily determinative." *In re Wholesale Grocery Prods. Antitrust Litig.*, 849 F.3d 761, 767 (8th Cir. 2017). Here, the Court has issued a final order resolving the case. Although the Court stayed entry of judgment for 90 days, the Court's consideration of the case on the merits has concluded. Unless the reasons for delay justify intervention at this late hour, this factor weighs against intervention.

### 2. Knowledge of the Litigation

A proposed intervenor's knowledge of the litigation "often weighs heavily in cases where the would-be intervenor was aware of the litigation for a significant period of time before attempting to intervene." *In re Wholesale Grocery Prods.* 849 F.3d at 767. For example, where a party knew about the litigation for twenty-one months and the proposed intervenor participated in the litigation through an agent, intervention was untimely. *U.S. Bank Nat'l Ass'n v. State Farm Fire & Cas. Co.*, 765 F.3d 867, 869–70 (8th Cir. 2014).

Not only have the proposed intervenors known about this litigation, Seaboard and two of the three Pilot Participants participated in the case through amici. The Court permitted the North American Meat Institute and National Pork Producers Council to file an amicus brief. Leadership at Seaboard, Clemens, and WholeStone Foods each submitted an affidavit in support of that brief. In its order on summary judgment, the Court considered the amicus brief and its supporting affidavits. Despite participating in this case through amici, the proposed intervenors did not move to intervene or share the concerns raised on these motions until after the Court ruled on summary judgment.

### 3. Reasons for Delay

Seaboard attempts to justify its delay in intervening by claiming a "change in circumstances," a "divergence of interests" with the USDA, and "first-time uncertainty—and real uncertainty—that was unknown, and not to be expected, 30 days ago." Seaboard's Mem. at 18–19. The Pilot Participants explain their delay by arguing that "the Court's decision vacating the Final Rule has raised new remedial questions as to which

4

the Pilot Participants have distinct interests, and only intervention can enable them to protect their interests." Pilot Participants' Mem. at 16.

The proposed intervenors claim that they now face uncertainty that could not previously have been foreseen. But Plaintiffs have sought complete vacatur of the Final Rule since October 7, 2019, when they filed the case. When the parties moved for summary judgment, USDA defended the rule and alternatively argued that only the line speed provision should be vacated if the Court found the Final Rule arbitrary and capricious. The proposed intervenors' amici even asked the Court not to vacate the rule, which demonstrates they knew, in August 2020, that vacatur was a possible outcome of this litigation. The proposed intervenors assumed the risks associated with a complete or partial vacatur of the Final Rule "by choosing to protect [their] interests through third parties rather than to join the litigation directly at the outset." *U.S. Bank Nat'l Ass'n*, 765 F.3d at 867.

It was only after this Court issued its decision that Seaboard and the Pilot Participants sought to intervene. The fact that the case was not resolved in their preferred manner does not justify an untimely intervention. As the Sixth Circuit has explained, "it would not have required unusual prescience on the part of the intervenors to recognize that their interests were implicated, and therefore to intervene in the suit long before." *Cuyahoga Valley Ry. Co. v. Tracy*, 6 F.3d 389, 396 (6th Cir. 1993). In that case, the proposed intervenors had chosen "to rely on the Attorney General's best efforts, which they were entitled to do." *Id.* Seaboard and the Pilot Participants appear to have been similarly content relying on the Department of Justice and amici. "They are not, however,

5

entitled to then enter the proceedings after the case has been fully resolved, in an attempt to achieve a more satisfactory resolution." *Id.*

There is no reason that Seaboard and the Pilot Participants could not have asked the Court to consider their concerns nine months ago when they submitted affidavits through amici. When the Court ruled on summary judgment, it considered the effect vacatur would have on pork producers based on the information submitted by amici. The proposed intervenors could have requested a stay of ten and a half months or raised other issues. They did not. They cannot now supplement the record to relitigate the remedy in this case because "permission to intervene does not carry with it the right to relitigate matters already determined in the case, unless those matters would otherwise be subject to reconsideration." *Arizona v. California*, 460 U.S. 605, 615 (1983).

The proposed intervenors also argue that their delay is justified because the government may change its position. However, they have identified no actual change of position by the government at any point in this litigation, nor have they explained why the likelihood of a change is greater now than it was earlier in the case. Therefore, the possibility of the government changing its position does not justify the delayed intervention.

### 4. Prejudice to the Existing Parties

Prejudice is not necessary to deny intervention where the other timeliness factors weigh clearly against intervention. *Tarek ibn Ziyad Acad.*, 643 F.3d at 1095. Even so, there is risk of prejudice here. The Court vacated the line speed limit elimination but left the rest of the NSIS intact. Allowing intervention for the purposes raised here would

frustrate USDA's ability to manage a national food safety system. One of the reasons the Court stayed its summary judgment order for 90 days was to allow FSIS, the agency tasked with setting national policy for pork processors, to decide how to proceed.

**III. Conclusion**

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Seaboard Foods, LLC's Motion to Intervene [ECF No. 128] is DENIED.

2. Quality Pork Processors, Inc., WholeStone Farms Cooperative, Inc., and Clemens Food Group, LLC's Motion to Intervene [ECF No. 147] is DENIED.

3. The Clerk of Court is directed to terminate Seaboard Foods, LLC's Motion to Stay [ECF No. 136].

Dated: May 20, 2021

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
